FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 MAY 16  P 4: 24

CLERK'S OFFICE
AT GREENBELT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

JENNIFER ANDERSON,                          *

      Plaintiff,                                *

v.                                                        **Case No.: GJH-14-2615**

                          *

**HOME DEPOT U.S.A., INC.,**                  *

      **Defendant.**                            *

                          *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Jennifer Anderson brings this negligence action against Defendant Home Depot,

U.S.A., Inc. for injuries sustained after a metal bracket fell on Plaintiff's head while she was

shopping in Defendant's store. Presently pending before the Court is Defendant's Motion for

Summary Judgment, ECF No. 59, Defendant's Motion to Strike Plaintiff's Expert Disclosure and

Bar Testimony, ECF No. 65, and Defendant's Motion to Seal, ECF No. 64. No hearing is

necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion for

Summary Judgment is denied, in part, and granted, in part, Defendant's Motion to Strike is

granted, and Defendant's Motion to Seal is granted, in part, and denied, in part.

### I.      BACKGROUND

#### A. The Incident

The following facts are undisputed and presented in the light most favorable to Plaintiff.

Anderson visited the Home Depot store in Waldorf, Maryland on the evening of October 30,

2011. ECF No. 59-2 at 3.[1] Anderson was there to purchase a wire ClosetMaid pantry shelf. *Id.* at
3–4. She had installed many ClosetMaid shelves before and was familiar with the product. *See
id.* at 4. When Anderson arrived at the store, it was "very empty" and near closing time. *Id.*
Anderson proceeded directly to find the pantry shelves. *Id.* When Anderson entered the correct
aisle, she approached a bin within a larger bay area where the ClosetMaid products were located.
*Id.* at 5; *see* ECF No. 62-14 at 2; ECF No. 62-6 at 2–5. The shelves were sitting in a flat bin
about eight feet long and three-and-a-half feet off the ground. *See* ECF No. 62-4 at 2. The bin
had a lip around it, about three or four inches tall, with prices listed on the lip. *See id*; ECF No.
59-2 at 8. The bin contained three wire shelving products, approximately six feet tall, positioned
upright and leaning backwards against the wall. *See* ECF No. 62-6 at 2. Flat shelving pieces were
sitting on the left side of the bin, small wire pantry shelves were in the middle, and large wire
pantry shelves were on the right side of the bin. ECF No. 59-2 at 5–7. The small and large
shelves had multiple tiers and were partially stacked on top of one another. *See* ECF No. 62-6 at
2; ECF No. 59-2 at 7.

Several inches above the shelving products was a display shelf, fully assembled, so that
customers could see what the shelving looked like when it was installed. ECF No. 59-3 at 2; ECF
No. 59-5 at 6–8. The display shelf was comprised of a long vertical track, approximately six feet
long, which was affixed to the wall. *See* ECF No. 59-5 at 8. Five twelve-inch long, triangle-
shaped, metal brackets hooked into the track, each about sixteen inches apart. *See id.*; ECF No.
62-4 at 2; ECF No. 59-8 at 3. A ventilated wire shelf sat on top of the metal brackets. *See* ECF
No. 59-3 at 2. According to Home Depot, no merchandise or overstock was supposed to be
stored on the display shelf. ECF No. 59-5 at 15. Defendant also contends that if the shelf were

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated
by that system.

installed correctly, it "would be a pretty hard hit to dislodge [the shelf] out of the metal bracket." ECF No. 59-5 at 9.[2]

Anderson selected a smaller pantry shelf from the middle of the bin. ECF No. 59-2 at 6–7. She did not move anything else in the bin. *Id.* at 7. No other person was in the aisle with Anderson at the time. *Id.* at 4. Anderson reached up and grabbed the bottom of the shelf to gently lift it up over the lip and out of the bin. *Id.* at 7. The wire shelf she grabbed came free of the ones beneath it, and as Anderson was lifting the shelf, she "felt the top of it tap something." *Id.* Anderson looked up and saw a metal bracket heading towards her. *Id.* The bracket struck Anderson's head, nose, cheek, and shoulder. *Id.* at 13. Photographs of the display shelf, taken after the incident, show four metal brackets on the vertical track of the display shelf, with the right-most bracket missing. *See* ECF No. 62-6 at 4; ECF No. 59-3 at 2. Although the bracket was kept initially, Home Depot does not know what ultimately happened to the bracket. *See* ECF No. 62-5 at 6.

Anderson filed a customer incident statement with Assistant Store Manager Phillip Yates at 7:50 p.m. ECF No. 62-2 at 2. The statement indicates that "Ms. Anderson was shopping in closet maid area, when she lift[ed] pantry rack it hit brace off top rack display. Brace came down and hit customer in top of head and left cheek. . . . Customer will go to Souther[n] MD Hospital." *Id.* The incident statement describes Anderson's injuries: "[p]retty bad headache and very nau[seous]. Bruise to left cheek and very red and swelling on top right portion of head. Also bruise on bridge of nose. Feels tingly in face, and sore." *Id.*

---

[2] Details regarding the installation of this display shelf are unclear from the record, *see* ECF No. 59-5 at 8; ECF No. 62-5 at 15; but Defendant appears to claim that the vendor, in this case ClosetMaid, would have installed it, or hired a third party to install it, sometime earlier in 2010 or 2011. ECF No. 62-5 at 16; *see also* ECF No. 59-8 at 5–6.

**B. Home Depot Plans and Procedures**

The layout and setup of the Home Depot product bays are guided by "planograms," which are visual diagrams published by Home Depot. *See* ECF No. 62-4 at 2–3; ECF No. 62-5 at 18. The particular planogram for the pantry shelf bay was titled "6 Bay – 99 – Closet Storage – Wire Shelving," and dated effective October 14, 2011. ECF No. 62-4 at 2–3. The planogram depicts the dimensions of various areas within the product bay, a list of inventory, and the intended placement of the products. The planogram also includes some "safety text" at the bottom, which includes such instructions as "[u]se a toe beam and bolted safety beam or safety cable to secure vertically stored shelving" and "[a]ssembled closet, cabinet, and shelving display units must be secured to the back wall . . ." *Id.* at 2. The planogram was used in both the installation or placement of the display shelf, and in the stocking of product merchandise within the bay. *See* ECF No. 62-5 at 18; ECF No. 62-7 at 4. While the vendors that would initially "do a set" would not "need much assistance from the store personnel," ECF No. 62-5 at 16, a Home Depot store manager would "sign off" on it. ECF No. 62-5 at 19. Yates explains that "[n]ormally when a set is done . . . whoever did the set would go over it with whoever the manager is on duty and if it would be me or whomever, just go over everything and, you know, show the planogram and everything is correct, if they're missing anything, they'll let us know, and so on." ECF No. 62-5 at 18.[3]

Home Depot also publishes "Standards for Merchandise on Floor or Shopping Level." ECF No. 62-9 at 2. Among other matters, these standards address "securing merchandise," which includes providing for the use of cables or beams to prevent front-facing merchandise, such as shelving units, from falling forward. *Id.* At all times relevant to the action, Home Depot

---

[3] Each bay also had a plastic envelope with a "bay service record," which a member from the Home Depot Merchandise Execution Team (MET) would regularly check. *See* ECF No. 62-7 at 2–4

employees completed a daily "Store Readiness Checklist Report," *see* ECF No. 62-10 at 2–6,

and did a "safety walk," ECF No. 62-15 at 4. The safety walk took about 8-10 minutes per aisle.

ECF No. 62-15 at 4. These readiness checks did not, however, require the employees to climb up

and actually physically inspect the displays. *See* ECF No. 62-7 at 8. All the inspections were

done visually and from ground level. ECF No. 59-5 at 12. As employee Zachary Jewell explains,

"[i]t's more us walking by and doing a visual and seeing, hey, there's something dangling or

there's something that doesn't look right on the display, and seeing something like that, then we

go from there." ECF No. 62-7 at 8. ECF No. 62-10 at 4–5.

The Store Readiness Checklist is a five-page spreadsheet covering seventeen different

departments, including hardware, kitchen & bath, decor, and others. ECF No. 62-10 at 2–6. The

employee completing the Checklist writes "Y" or "N" in response to a series of conditions. For

example, in D59 Decor, the employee must verify that the "[a]isles [are] clear of empty pallets,

debris, water," that there is "no leaning or protruding merchandise," and that the "hand stacked

merchandise [is] in overhead stable and no higher than 4 ft." ECF No. 62-10 at 5. The Checklist

from October 30, 2011, the day of the incident, indicates all "Y" responses and zero "N"

responses. *Id.* at 2–6.

In this action, Plaintiff alleges claims of negligence and premises liability against Home

Depot. *See* ECF No. 13. Home Depot has moved for summary judgment. ECF No. 59. In

opposition to Defendant's Motion for Summary Judgment, Plaintiff has provided the preliminary

report of J. Terrence Grisim, who Plaintiff has designated as an expert in retail safety. ECF No.

62-13 at 2–6. Defendant has moved to strike Plaintiff's expert disclosure and prevent Grisim

from testifying. ECF No. 65. Before addressing whether Plaintiff has created a genuine issue of

material fact, it is appropriate to first consider the admissibility of Plaintiff's expert testimony.

## II.    MOTION TO STRIKE EXPERT TESTIMONY

### A.  Standard of Review

Federal Rule of Evidence 702, which governs the admissibility of expert testimony,

provides that:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if:
> (a) The expert's scientific, technical, or other specialized
>     knowledge will help the trier of fact to understand the evidence
>     or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
>     and
> (d) the expert has reliably applied the principles and methods to
>     the facts of the case.

Fed. R. Evid. 702. *Daubert v. Merrell Dow Pharm., Inc.* requires the trial court to act as a

"gatekeeper" of expert testimony, ensuring that the proposed testimony "both rests on a reliable

foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). In applying Rule 702,

the court balances "two guiding, and sometimes competing, principles." *Westberry v. Gislaved*

*Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). On one hand, "Rule 702 was intended to

liberalize the introduction of relevant expert evidence." *Id.* On the other hand "expert witnesses

have the potential to 'be both powerful and quite misleading.'. . . [and] proffered evidence that

has a greater potential to mislead than to enlighten should be excluded." *Id.* (internal citations

omitted).

The proponent of the expert testimony bears the burden of establishing its admissibility,

that is, "the burden of coming forward with evidence from which the trial court could determine

that the evidence is admissible under *Daubert.*" *Main St. Am. Grp. v. Sears, Roebuck, & Co.*, No.

CIV JFM-08-3292, 2010 WL 956178, at *3 (D. Md. Mar. 11, 2010) (citing *Daubert*, 509 U.S. at

592 n.10 (1993)). The court "must assess the proffered evidence using a two-pronged analysis." *Main St. Am. Grp.*, 2010 WL 956178, at *3 (citing *Newman v. Motorola, Inc.*, 218 F. Supp. 2d 769, 772 (D. Md. 2002)). The court must determine whether the testimony is "reliable" and whether it is "relevant." *Id.* (citing *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000)).

In assessing whether the testimony is reliable, the court may consider a variety of factors, including (1) "whether the theory or technique in question can be (and has been) tested," (2) "whether [the theory or technique] has been subjected to peer review and publication," (3) "its known or potential error rate" and 4) "whether it has attracted widespread acceptance within a relevant scientific community." *Daubert*, 509 U.S. at 580. "The inquiry is a flexible one, and its focus must be solely on principles and methodology, not on the conclusions that they generate." *Id.* Additionally, "although experiential expert testimony does not rely on anything like a scientific method, such testimony is admissible . . . so long as an experiential witness explains how his experience leads to the conclusion reached, why his experience is a sufficient basis for the opinion, and how his experience is reliably applied to the facts." *United States v. Bynum*, 604 F.3d 161, 167 (4th Cir. 2010) (internal alterations and citations omitted).

Expert testimony is relevant where it is "sufficiently tied to the facts of the case [so] that it will aid the jury in resolving a factual dispute." *Casey v. Geek Squad® Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 341 (D. Md. 2011) (citing *Daubert*, 509 U.S. at 591)). Expert testimony "is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). Thus, "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986); *see, e.g., Page v. Supervalu, Inc.*,

No. CIV.A. WGC-14-1508, 2015 WL 1439572, at *16 (D. Md. Mar. 26, 2015) (finding "[i]t is common knowledge that a grape on the floor creates a dangerously slippery condition" and "placing mats on the floor to prevent dangerously slippery conditions clearly lies within the range of a jury's common knowledge and experience.").

### B. Plaintiff's Expert Report

Plaintiff has retained J. Terrence Grisim, a "Certified Safety Professional" and purported "experiential expert in safety engineering, occupational safety, warehouse safety, industrial safety, product display safety, warehouse store safety, safety training, OSHA compliance and risk management." ECF No. 70 ¶ 3. Grisim states that he has worked in "retail safety for 47 years." ECF No. 62-13 at 5. Grisim's curriculum vitae reveals that he has a Bachelor's degree in "General Studies, Youth Services, with concentrations in Aviation Engineering Technology, Psychology, and Sociology." ECF No. 73-1 at 2. He has professional certifications as a Certified Safety Professional and Certified Product Safety Manager. *Id.* Grisim is also a spokesperson for the American Society of Safety Engineers. ECF No. 62-13 at 5. He is currently the President of Safety Management Consultants, Inc. ECF No. 73-1 at 3.

In rendering his opinions in this case, Grisim reviewed scene photos, the incident report, deposition transcripts,[4] answers to interrogatories, and the parties' production of documents. ECF No. 62-13 at 2. Grisim's "evaluation of the display" led him to several "likely causes for this accident": (1) "[t]he shelf bracket was not properly installed on the display so that it 'nested' completely into the vertical bar to which it attaches," (2) "a store employee or customer, using a store ladder, placed the shelf bracket on the display shelf and it was knocked off when it was bumped when plaintiff tried to retrieve her merchandise," or (3) "the display design and layout

---

[4] Specifically, Grisim reviewed the depositions of Jennifer Anderson, Zachary Jewell, Curtis Russell, David Heil, and Phillip Yates. ECF No. 62-13 at 2–3.

was unsafe as it did not allow enough clearance between the stock and the display so that customers could remove merchandise without striking the display shelf above." ECF No. 62-13 at 3. Grisim concludes that Home Depot was negligent. *Id.* at 4. In support, Grisim cites the National Safety Council Accident Prevention Manual for Business and Industry Administration & Programs 13th Edition, stating that "[w]orkers must build displays so that they are stable to prevent articles from falling and injuring or tripping customers." *Id.*

### C. Analysis

Defendant contends that Grisim is not qualified to provide this testimony. ECF No. 73 at 2. Defendant notes that Grisim "does not identify any formal education or experience in engineering, retail displays or retail/shopping environments," and that Grisim "is not a licensed professional engineer." *Id.* It is true that "[t]he fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas." *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001). Here, Grisim identifies no specific experience working in a retail store or having installed or inspected retail store product displays. *See* ECF No. 73-1 at 2–5. In fact, the majority of Grisim's professional experience appears to be related to fleet and motor vehicle safety consulting. *Id.* Grisim claims no expertise with ClosetMaid products or displays, or with shelving units in general. Nevertheless, "the fit between an expert's specialized knowledge and experience does not need to be exact." *Parker v. Allentown, Inc.*, 891 F. Supp. 2d 773, 785 (D. Md. 2012). Grisim states that as President of Safety Management Consultants, he "provides loss prevention and risk management consulting in the areas of occupational safety." ECF No. 73-1 at 4. The Court will assume *arguendo* that Grisim is qualified to provide testimony on "warehouse safety issues," but ultimately concludes that his testimony does not meet the standards of *Daubert*.

Grisim's testimony is not reliable. Grisim points to no principles or methodology utilized in reaching his conclusions, nor does he explain how his experience forms a sufficient basis for these conclusions. Grisim reviewed no evidence of the condition of the shelves prior to the accident. Grisim never visited the Home Depot store where the accident occurred. He conducted no interviews. *See Muse v. Supervalu Inc.*, No. CIV.A. WGC-10-1105, 2011 WL 1980607, at *7 (D. Md. May 20, 2011) (finding expert testimony unreliable where expert had not gone to the store or spoken to any of the managers or employees). Grisim took no measurements of anything related to the accident. Grisim did no research about any of the ClosetMaid products at issue. He did not inspect any of the products involved in the accident. He performed no tests. He did not reconstruct the display shelf or recreate the accident. Grisim baldly asserts that the shelf bracket was "not properly installed on the display so that it 'nested' completely into the vertical bar." ECF No. 62-13 at 3. But Grisim does not explain his reasoning or methodology for reaching this conclusion. He does not explain how his experience as a "certified safety expert" allowed him to conclude that the bracket was not properly installed. Grisim also does not explain the basis for determining that "the display design and layout was unsafe." Ultimately, Grisim's conclusions amount to no more than speculation and "the ipse dixit of the expert." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 203 (4th Cir. 2001) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 157 (1999)).

Grisim's citation of the National Safety Council Accident Prevention Manual is also unhelpful. Just as in *Coffee v. Menard, Inc.*, where the court struck Grisim's testimony in a factually similar case, "the quoted portion of the National Safety Council manual does not establish any standard against which an expert could assess a particular retail display. It merely states that displays should be stable.'" *Coffee v. Menard, Inc.*, No. 13 C 2726, 2015 WL

1399049, at *3 (N.D. Ill. Mar. 25, 2015); *see also Conrad v. CSX Transp., Inc.*, No. CIV.A. MJG-14-51, 2015 WL 3797873, at *5 (D. Md. June 17, 2015) (finding experiential expert opinion not the product of reliable principles and methods where expert could cite no actual rules or guidelines for his opinion). In sum, there is "simply too great an analytical gap between the data and the opinion proffered" to find Grisim's testimony reliable in this case. *Casey v. Geek Squad® Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 341 (D. Md. 2011) (citing *Pugh v. Louisville Ladder, Inc.*, 361 Fed.Appx. 448, 454 n.4 (4th Cir. 2010)).

Grisim's testimony is also not relevant because it would not assist the trier of fact in determining a fact at issue. As the court in *Coffee* stated, "Grisim simply draws common-sense conclusions that jurors without his experience are equally qualified to make." *Coffee*, 2015 WL 1399049, at *3 (N.D. Ill. Mar. 25, 2015); *see also United States v. Christian*, 673 F.3d 702, 710 (7th Cir. 2012) ("Expert testimony does not assist where the jury has no need for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic."). There are "minimal facts" in this case, and "[t]here is no fact in issue begging for an expert's explanation." *Torres v. K-Mart Corp.*, 145 F. Supp. 2d 161, 163 (D.P.R. 2001) (barring Grisim's safety testimony in slip-and-fall case). Jurors will be able to rely on their common sense and life experience to determine whether a bracket, if screwed in properly, should fall on a customer's head, even assuming the customer gently bumps that bracket. Jurors will also be able to determine whether a few inches of overhead space is sufficient room to safely lift a wire shelf over a four-inch tall lip, without potentially dislodging a shelf sitting above it. Grisim's testimony is not helpful in this regard, and therefore it is not relevant. *See Puerto v. Mkt.*, No. 14-5118, 2016 WL 7338526, at *2 (D.N.J. Dec. 19, 2016) ("While retail safety operations may implicate specialized knowledge in some cases, the report

here provides nothing 'beyond the ken of an average juror.'"). For these reasons, Defendant's

Motion to Strike is granted.

Plaintiff's ability to create a genuine issue of material fact, however, is not vitiated by the

exclusion of the expert testimony — an inquiry to which the Court now turns.

### III.    MOTION FOR SUMMARY JUDGMENT

#### A.  Standard of Review

The Court "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue as

to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Id.* The Court considers the facts and draws all reasonable inferences in

the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

However, the Court must also abide by its affirmative obligation to prevent factually

unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th

Cir. 1993).

The party seeking summary judgment bears the initial burden of identifying those

portions of the record demonstrating the absence of a genuine issue of material fact. *See Celotex

Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met

that burden, the non-moving party must come forward and show that such an issue does exist.

*See Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "The party

opposing a properly supported motion for summary judgment may not rest upon the mere

allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there

is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (internal alterations omitted).

## B. Analysis

Plaintiff brings claims of i) negligence-personal injury, ii) premises liability, and iii) negligent hiring, training, and supervision arising from this incident. The Court applies Maryland law in this diversity case, as the alleged tort and resulting injury occurred in Maryland. *See Rybas v. Riverview Hotel Corp.*, 21 F. Supp. 3d 548, 560 (D. Md. 2014). Under Maryland law, a plaintiff bringing a negligence claim must establish four elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 382 Md. 170, 182 (2004).

"The duty of care owed by an owner or occupier of a premises is a function of [its] legal relationship to the person entering on the premises." *Rybas*, 21 F. Supp. 3d at 560 (citing *Casper v. Charles F. Smith & Son, Inc.*, 316 Md. 573, 578 (1989)). "Business invitees" are "visitors invited to enter the premises in connection with some business dealings with the possessor," *Rhaney v. Univ. of Maryland E. Shore*, 388 Md. 585, 602 (2005), and as such, are owed "the highest duty." *Rybas*, 21 F. Supp. 3d at 560 (citing *Norris v. Ross Stores, Inc.*, 159 Md. App. 323, 335 (2004)). Plaintiff Jennifer Anderson was a business invitee of Home Depot, as she was invited to enter the premises to purchase goods for sale.

A business owes its invitees "the duty to use ordinary care to have its premises in a reasonably safe condition." *Norris*, 159 Md. App. at 335. While a business is "not an insurer" of its customers' safety, *Norris*, 159 Md. App. at 335, a business must "use reasonable and ordinary

care to keep the premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for the invitee's own safety will not discover." *Gillespie v. Ruby Tuesday, Inc.*, 861 F. Supp. 2d 637, 641 (D. Md. 2012) (citing *Deboy v. City of Crisfield*, 167 Md. App. 548, 555 (2006)). "The duties of a business invitor thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers." *Rybas*, 21 F. Supp. 3d at 560 (citing *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388)). "Typically when a business invitee is injured on a proprietor's premises, the business invitee has the burden of showing the proprietor created the dangerous condition or had actual or constructive knowledge of its existence."[5] *Curry v. J.C. Penney Corp.*, No. CIV.A WGC-09-830, 2010 WL 972430, at *5 (D. Md. Mar. 12, 2010) (citing *Moulden v. Greenbelt Consumer Servs. Inc.*, 239 Md. 229, 232 (1965)) (internal quotations marks omitted).

In certain circumstances, however, a plaintiff may make a *prima facie* case of negligence by invoking the doctrine of *res ipsa loquitur. See Vito Sargis & Jones, Ltd.,* 108 Md. App. 408, 417 (1996). This doctrine permits, but does not require, a jury to infer a defendant's negligence as the cause of an accident, even where direct evidence of that negligence is lacking. *Norris*, 159 Md. App. at 329; *see also Romero v. Brenes*, 189 Md. App. 284, 301 (2009) (noting that *res ipsa loquitor* "relaxes the normal rules of proof" in a negligence action). *Res ipsa loquitur* does not shift the ultimate burden of proof from the plaintiff. Rather, it places on the defendant "the duty

---

[5] The vast majority of cases applying the "created the dangerous condition or had actual or constructive knowledge" standard are slip-and-fall cases. *See, e.g., Watson v. J.C. Penney Corp., Inc.*, No. CV WGC-15-469, 2015 WL 7712252, at *3 (D. Md. Nov. 30, 2015); *Page v. Supervalu, Inc.*, No. CIV.A. WGC-14-1508, 2015 WL 1439572, at *4 (D. Md. Mar. 26, 2015); *Rybas v. Riverview Hotel Corp.*, 21 F. Supp. 3d 548, 562 (D. Md. 2014); *Myers v. TGI Friday's, Inc.*, No. CIV. JFM 07-333, 2007 WL 4097498, at *4 (D. Md. Nov. 9, 2007). However the standard has been referenced in several falling object cases as well. *See Curry v. J.C. Penney Corp.*, No. CIV.A WGC-09-830, 2010 WL 972430, at *5 (D. Md. Mar. 12, 2010); *Gillespie v. Ruby Tuesday, Inc.*, 861 F. Supp. 2d 637, 642 (D. Md. 2012).

of going forward with the evidence to explain or rebut, if [it] can, the inference that [it] failed to use due care." *Munzert v. American Stores*, 232 Md. 97, 103 (1963). To rely on *res ipsa loquitor*, a plaintiff must establish "(1) [a] casualty of a sort which usually does not occur in the absence of negligence; (2) caused by an instrumentality within the defendant's exclusive control; (3) under circumstances indicating that the casualty did not result from the act or omission of the plaintiff." *Dover Elevator Co. v. Swann*, 334 Md. 231, 236–37 (1994). "The central question involved in the use of the *res ipsa loquitur* doctrine is whether, by relying on common sense and experience, the incident more probably resulted from the defendant's negligence rather than from some other cause." *Norris*, 159 Md. App. at 331.

As the Court has already struck Plaintiff's expert testimony, Plaintiff has presented no other direct evidence of negligence in this case. *See Curry v. J.C. Penney Corp.*, No. CIV.A WGC-09-830, 2010 WL 972430, at *7 (D. Md. Mar. 12, 2010) ("If [Plaintiff] had retained an expert who opined that J.C. Penney improperly installed the shelves . . . such an opinion would be proffering direct evidence of negligence."). There were no witnesses to the accident except for Plaintiff. There is no video evidence. No testimony has been rendered regarding the actual installation of the ClosetMaid display. Additionally, there is no evidence showing the actual condition of the display shelf before the bracket fell. Plaintiff has put forth no direct evidence demonstrating that Defendant created the dangerous condition or had actual knowledge of the dangerous condition. Thus, the success of Plaintiff's claim relies upon the applicability of *res ipsa loquitor*. *See Gillespie v. Ruby Tuesday, Inc.*, 861 F. Supp. 2d 637, 642 (D. Md. 2012) (finding that plaintiff had no direct evidence of negligence when lamp fell on her head at defendant's restaurant, but the doctrine of *res ipsa loquitor* would permit jury to infer negligence).

15

Falling metal brackets are not the kind of casualty that ordinarily occur absent negligence. Indeed, Maryland courts have applied the doctrine of *res ipsa loquitor* in similar cases where various objects fell onto a passerby's head. *See Gillespie v. Ruby Tuesday, Inc.*, 861 F. Supp. 2d 637, 642 (D. Md. 2012) (light fixture fell onto restaurant patron's head); *Norris v. Ross Stores, Inc.*, 159 Md. App. 323, 335 (2004) (metal shelving unit containing glass products collapsed onto customer); *Leidenfrost v. Atl. Masonry, Inc.*, 235 Md. 244, 247 (1964) (pile of slag blocks fell onto employee on a construction site). But the doctrine is not limited to falling objects, and it has also been applied, for example, in cases where steps crumbled beneath a person's feet, *see Blankenship v. Wagner*, 261 Md. 37, 40, 273 A.2d 412, 413 (1971) (delivery man carrying refrigerator fell through steps at property owner's residence), or a ceramic handle broke off the wall of a motel bathtub, *see Apper v. Eastgate Assocs.*, 28 Md. App. 581, 583 (1975). One would expect that in the ordinary course of business, brackets that should be affixed to the wall, do not fall onto customers selecting items for purchase. This is true regardless of who installed the display shelf, because Home Depot was under a duty to inspect its premises and maintain its premises in a reasonably safe condition. *See Rector v. Oliver*, 809 N.E.2d 887, 892 (Ind. Ct. App. 2004) ("Regardless of who installed the light fixture, we cannot say that a light fixture falling from the ceiling of a business is the sort of event which ordinarily happens if those who have the management and control exercise proper care.").

Additionally, the parties have, at various points in their briefings, grappled with the idea that the bracket was not attached to the wall at all, but rather, sitting loosely atop the display shelf. *Compare* ECF No. 59-1 at 15 ("If this Court assumes, on the other hand, that the fallen bracket had been resting on top of the Display Shelf before the Plaintiff's accident, there is absolutely no evidence as to whether the loose bracket was placed there by a Home Depot

employee, a ClosetMaid employee, or by another Home Depot customer who had impermissibly used one of Home Depot's rolling ladders to reach the top of the Display Shelf.") *with* ECF No. 62-1 at 15 ("While defendant has produced a bare scintilla of speculation that it is possible that a customer can use a ladder and place a bracket on top of a shelf, this would not explain why the defendant permitted its own employees to endanger customers by violating the rule concerning control of ladders."). Ultimately, this is a question of fact properly reserved for the jury. The doctrine of *res ipsa loquitor* merely permits, but does not require, the jury to infer negligence on the part of defendant absent direct evidence. *See Norris v. Ross Stores, Inc.*, 159 Md. App. 323, 332–34 (2004). Plaintiff is not required to eliminate all possible causes of the falling bracket; she is simply required to show that it is more likely than not her injuries were "caused by the defendant's negligence than by some other cause." *Gillespie v. Ruby Tuesday, Inc.*, 861 F. Supp. 2d 637, 644 (D. Md. 2012). Even assuming *arguendo* that an unknown employee placed the bracket on top of the display shelf, or that a customer climbed a store ladder to do so, a reasonable jury could still find that Home Depot breached the standard of care. The first element of *res ipsa* is satisfied.

Defendant also cannot establish as a matter of law that the display shelf was not in its exclusive control. *Norris v. Ross Stores, Inc.* is particularly instructive on this point. 159 Md. App. 323 (2004). As the court noted, "evidence of complete control is not required. It may be established by evidence sufficient to warrant an inference of its existence, and circumstantial evidence may suffice. The plaintiff is not required in his proof to exclude remotely possible causes and reduce the question of control to a scientific certainty." *Norris*, 159 Md. App. at 332 (2004) (citing *Leidenfrost v. Atl. Masonry, Inc.*, 235 Md. 244, 250 (1964)). The *Norris* court rejected a narrow constriction of "exclusive control," reasoning that "'control,' if it is not to be

pernicious and misleading, must be a very flexible term." *Id.* at 332 (internal citations omitted).

The *Norris* case involved a similar set of facts, in which a metal shelving unit containing glass

bottles collapsed onto a shopper walking down the aisle. The court flatly rejected defendant

Ross's contention that because other customers had access to the shelves, the shelves were not in

the exclusive control of Ross. The court also did not require the plaintiff to show that Ross

installed the shelves. The court wrote:

> Here, we assume that Ross is a self-service store, where customers
> are invited to inspect, remove, and replace goods on shelves. The
> exercise of ordinary care may well require the owner to take
> greater precautions than would otherwise be needed to safeguard
> against the possibility that a customer may create a dangerous
> condition by disarranging the merchandise and creating potentially
> hazardous conditions. . . .
>
> The doctrine of *res ipsa loquitur* does not require that the shelving
> unit have been installed by Ross. We observe that the exclusive
> control requirement of the *res ipsa loquitur* doctrine requires that
> Norris demonstrate that Ross had exclusive control over the
> instrumentality *at the time of the alleged negligent act.* Here, the
> negligent act could have been the installation of the shelving unit,
> but the jury could also reasonably infer that the negligence was the
> failure to reasonably maintain the shelving units. Regardless of
> who installed the shelving units, we cannot say that falling
> shelving units are the sort of event that ordinarily happens if those
> who have the management and control exercise proper care.

*Norris v. Ross Stores, Inc.*, 159 Md. App. at 333–34 (emphasis in original). Analogously, Home

Depot was under a duty to maintain its display shelves in a reasonably safe condition. A jury

could conclude that Home Depot either signed off on a display shelf in which one or more

brackets was not fastened properly, or that Home Depot allowed the brackets to become loose

over time, because there was inadequate overhead space to safely remove the merchandise. It is

equally possible that a jury could infer negligence through the alternative hypothesis that an

employee, or even a customer, left a bracket sitting atop the display shelf, and it went

uncorrected by the Defendant. The second element is satisfied.

Finally, Plaintiff must "eliminate [her] own conduct as a cause of the injury. [She] may do so by showing that [she] has done nothing abnormal with the instrumentality causing the injury and has used it in the manner and for the purpose for which it was intended." *Apper v. Eastgate Assocs.*, 28 Md. App. 581, 588 (1975). There is no evidence that Anderson did anything abnormal with the wire shelf. Anderson merely lifted the shelf out of the bin where it was sitting, and she was in fact invited to do so in order to purchase it. Anderson testified that when she lifted the shelf, she did so gently. ECF No. 59-2 at 7. She testified that she was familiar with the product and had purchased and installed many such products before. *Id.* at 4. While Anderson's case differs slightly from falling object cases in that she made contact with the overhead display,

> [I]t is not necessary that [Plaintiff] be the completely inert object of the negligent act. The act of the injured person which sets in motion the instrument of the injury must not be confused with an act of the injured party by which, sharing responsibility in some way with the defendant for the creation or maintenance of the dangerous condition, [she] is deemed also to share the negligence.

*Apper*, 28 Md. App. at 589. Here, Plaintiff was doing no more than what was required of her to select the product. Plaintiff has satisfied the third element of *res ipsa loquitor* to survive summary judgment on Counts I and II.

Plaintiff has not, however, carried her burden for Count III, her claim for negligent hiring, training, and supervision. "As in any action for negligence, a plaintiff asserting a cause of action for negligent hiring or retention must prove duty, breach, causation, and damages." *Asphalt & Concrete Servs., Inc. v. Perry*, 221 Md. App. 235, 256 (2015). To prevail on this claim, Plaintiff must show that "[she] suffered injury caused by the tortious conduct of defendant's employees; that defendant knew or should have known that its employees were capable of inflicting such harm; that defendant failed to use proper care in supervising or training its employees; and that defendant's failure was the proximate cause of plaintiff's injuries. *Sydnor*

*v. Finish Line, Inc.*, No. CIV. CCB-10-3650, 2011 WL 4592400, at *3 (D. Md. Sept. 29, 2011).

"Under Maryland law, an employer's liability in this regard is not to be reckoned simply by the happening of the injurious event. Rather, there must be a showing that the employer failed to use reasonable care in making inquiries about the potential employee, or in supervising or training the employee." *Economides v. Gay*, 155 F. Supp. 2d 485, 489 (D. Md. 2001) (internal citations omitted).

Plaintiff has put forth no evidence about a specific employee who was negligently hired or trained. The record contains no factual allegations about tortious conduct of any of Defendant's employees. *See Silver v. Wells Fargo Bank, N.A.*, No. CV MJG-16-382, 2016 WL 6962862, at *8 (D. Md. Nov. 29, 2016) (dismissing negligent hiring and retention claim where Plaintiff provided no specific factual allegations about defendant's failure to use reasonable care in employing or supervising a particular employee). Plaintiff has also failed to demonstrate in any meaningful way how Home Depot's hiring or training policies were negligent. Plaintiff states that the National Safety Council Accident Prevention Manual states that "workers must build displays so they are stable," and that "the store employees each testified that there was no training of procedure requiring physical inspection of the display." ECF No. 62-1 at 18. But Plaintiff does not cite any evidence as to how these policies were a breach of the standard of care or the proximate cause of Plaintiff's injuries. *See Umheni v. Target Corp.*, No. RWT 15-CV-3827, 2017 WL 1176058, at *2 (D. Md. Mar. 30, 2017) (granting summary judgment for defendant Target where plaintiff provided only bare assertions regarding Target's alleged negligence in hiring, training, and supervising employees who maintained the premises). Because there is no genuine issue for trial on this claim, Count III must be dismissed.

## IV. MOTION TO SEAL

As a final matter, Defendant has moved to seal Plaintiff's Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, ECF No. 62, and various attachments, ECF Nos. 62-4, 62-8, 62-9, 62-10, 62-11, and 62-13. ECF No. 64. A motion to seal must comply with Local Rule 105.11, which requires the requesting party to "include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide specific protection." Loc. R. 105.11 (D. Md. 2016). Although certain circumstances necessitate the sealing of filings, "[i]t is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Roberts v. Office of Sheriff for Charles Cty.*, No. CIV.A. DKC 10-3359, 2014 WL 3778594, at *1 (D. Md. July 29, 2014) (citing *Doe v. Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014)). There is a "presumption of access accorded to judicial records" that can only be rebutted if "countervailing interests heavily outweigh the public interest in access." *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988).

Here, Defendant fails to meet the requirements of Local Rule 105.11 with respect to Plaintiff's Memorandum. Defendant states that Plaintiff's "Memorandum and exhibits contain Home Depot's policies and procedures and or other documents referencing Home Depot's policies and procedures." ECF No. 64 at 1. Defendant points to a Protective Order and confidentiality agreement, and further states that the information sought to be protected is "not of the kind generally available to the public and is of the kind that Home Depot takes a proprietary interest in developing and protecting from general disclosure to the public and its competitors." *Id.* at 2. However, merely claiming a proprietary interest in store plans and policies does not constitute a "specific factual representation." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty*

*Network*, No. CIV. AW 12-954, 2013 WL 3442764, at *2 (D. Md. July 8, 2013) (noting that "vague reference to 'confidential trade secrets' is not a specific factual representation"). Defendant also asserts, without further explanation, that "Defendant has no alternative to seeking sealing as the public can generally access the pleadings and exhibits filed in this Court . . ." *Id.* Defendant does not explore any alternative, such as redaction, as opposed to sealing Plaintiff's Memorandum in its entirety. *See Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F. Supp. 3d 465, 489 (D. Md. 2014) (denying motion to seal and noting that parties have made no attempt to redact certain portions of the filings). Additionally, Defendant has not met its burden of showing that its claimed business interests heavily outweigh the public interest in access to this document. On this basis, the Court cannot permit the sealing of a document as critical to the Court's determination of the summary judgment motion as the Plaintiff's Opposition Memorandum.

With respect to the attached exhibits, however, the Court acknowledges that these documents may contain sensitive business information, and will grant the Motion to Seal ECF Nos. 62-4, 62-8, 62-9, 62-10, 62-11, and 62-13. *See Barimah v. Bank of Am., Inc.*, No. PWG-14-3324, 2016 WL 4089564, at *8 (D. Md. Aug. 2, 2016) (granting motion to seal certain documents containing sensitive business information); *Stratagene v. Invitrogen Corp.*, 206 F.R.D. 121, 122 (D. Md. 2002) (granting motion to seal where accompanying exhibits contained potentially sensitive business information, and no objection had been filed). Regarding Plaintiff's Memorandum itself, ECF No. 62-1, Defendant shall identify any specific portions which warrant redaction, and the basis for any suggested redaction, within 7 days of the attached Order. Any objections may be filed within 7 days of such motion. At that time, the Court will revisit its

decision whether to maintain the Memorandum under seal. The Motion to Seal is thus granted, in part, and denied, in part.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike, ECF No. 65, is granted, Defendant's Motion for Summary Judgment, ECF No. 59, is denied, in part, and granted, in part, and Defendant's Motion to Seal, ECF No. 64, is granted, in part, and denied, in part. A separate Order shall issue.

Date: May / /, 2017

GEORGE J. HAZEL
United States District Judge